UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 6820 |
| | ) | |
| v. | ) | |
| | ) | Judge Lefkow |
| GENERAL IRON INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CONSENT DECREE

**Table of Contents**

I.     JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.    COMPLIANCE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VI.   SUPPLEMENTAL ENVIRONMENTAL PROJECTS . . . . . . . . . . . . . . . . . . . . . 6

VII.  REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VIII. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IX.   FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

X.    DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XI     INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . . . . . 22

XII.  FAILURE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . . 24

XIV. COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XV.  NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XVI. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

XVII. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

XVIII. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

XIX.  TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

XX.   SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XXI.  INTEGRATION/APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**XXII. FINAL JUDGMENT** ................................................. 29

**APPENDICES** ......................................................... 35

    **CONSENT AGREEMENT APPENDIX A**
    **DIESEL RETROFIT SUPPLEMENTAL ENVIRONMENTAL PROJECT** ..... 36

        **INTERNATIONAL TRUCK & ENGINE CORPORATION**
        **BROCHURE** ................................................. 38

        **TABLE 1** ..................................................... 39

        **TABLE 2** ..................................................... 47

    **CONSENT AGREEMENT APPENDIX B**
    **GAS-POWERED LAWNMOWER BUY-BACK PROGRAM** ................. 48

    **CONSENT AGREEMENT APPENDIX C**
    **GREEN ROOF SUPPLEMENTAL ENVIRONMENTAL PROJECT** .......... 50

    **CONSENT AGREEMENT APPENDIX D**
    **NATURAL LANDSCAPING SUPPLEMENTAL ENVIRONMENTAL**
    **PROJECT** ...................................................... 52

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 6820 |
| | ) | |
| v. | ) | |
| | ) | Judge Lefkow |
| GENERAL IRON INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CONSENT DECREE

WHEREAS, Plaintiff, United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed a Complaint in this action on October 22, 2004, alleging that Defendant General Iron Industries, Inc., disposed of refrigerant-containing appliances in a manner which violated Section 608 of the Act, 42 U.S.C. § 7671g, and its implementing regulations at 40 C.F.R. Part 82, Subpart F.

WHEREAS, the Complaint against Defendant alleges, pursuant to Section 113(b) of the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. § 7413(b), that up until May 1999, Defendant knowingly disposed of appliances containing Class I and/or Class II substances used as refrigerant, causing venting of those substances into the environment in violation of 40 C.F.R. § 82.154 (a). The Complaint further alleges that in violation of 40 C.F.R. § 82.156 (f), Defendant failed either to recover the refrigerant from the appliances prior to disposal, or to obtain the required verification that all remaining refrigerant had been recovered from the appliances and that the appliances no longer contained any refrigerant.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C.§ 7413 (b), and 28 U.S.C. §§ 1331, 1345 and 1355, and over the parties.

2.    Venue is proper in this District pursuant to Section 113 (b) of the Clean Air Act, 42 U.S.C.§ 7413 (b), and 28 U.S.C.§§ 1391 (b) and (c) and 1395 (a), because General Iron's facility is located in the Northern District of Illinois, and because this is the judicial district in which the events giving rise to the claim occurred. For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree or such action and over Defendant, and consents to venue in this judicial district.

3.    Defendant stipulates that EPA has jurisdiction over the subject matter alleged in the Complaint and that the Complaint states a claim upon which relief can be granted against Defendant pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C.§ 7413 (b). Defendant waives any defenses it might have as to jurisdiction and venue, and, without admitting or denying the factual allegations contained in the Complaint, consents to the terms of this Consent Agreement and Order.

## II. APPLICABILITY

4.     The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant, its agents, successors, and assigns.

5.     Any transfer of ownership or operation of the Facility to any other person must be conditioned upon the transferee's agreement to undertake the obligations required by this Decree, as provided in a written agreement between Defendant and the proposed transferee, enforceable by the United States as third-party beneficiary of such agreement. At least 30 days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 5, the United States Attorney for the Northern District of Illinois, and the United States Department of Justice, in accordance with Section XV of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree. No transfer of ownership or operation of the Facility, whether in compliance with this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.

6.     Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree. Defendant shall further provide the relevant SEP description to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the relevant terms of this Consent Decree.

3

7.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

8.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Complaint" shall mean the Complaint filed by the United States in this action;

b.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto;

c.     "CAA" means the Clean Air Act, as amended, 42 U.S.C. §§ 7401 et seq.;

d.     "Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day;

e.     "Defendant" shall mean General Iron Industries, Inc.;

f.     "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

4

g.    "Facility" shall mean Defendant's recycling facility located at 1909 North Clifton Avenue in Chicago, Illinois;

h.    "Interest" means the rate of interest specified for a money judgment in a civil case recovered in a district court pursuant to 28 U.S.C. § 1961;

i.    "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

j.    "Parties" shall mean the United States and Defendant;

k.    "Section" shall mean a portion of this Decree identified by a roman numeral;

l.    "State" shall mean the State of Illinois;

m.    "United States" shall mean the United States of America, acting on behalf of EPA;

n.    "Work" means all activities Defendant is required to perform under this Consent Decree.

## IV. CIVIL PENALTY

9.    Within 30 days after the Effective Date of this Consent Decree, Defendant shall pay the sum of two hundred and fifty thousand dollars ($250,000) as a civil penalty, together with Interest as defined in paragraph 8h, above running from the Effective Date of the Consent Decree. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions to be provided to Defendant following lodging of the Consent Decree by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of Illinois. At the time of payment, Defendant shall simultaneously send written notice of payment and

5

a copy of any transmittal documentation, which should reference DOJ case number 90-5-2-1-07322 and the United States Attorney's Office file number 2000V01962, to the United States in accordance with Section XV of this Decree (Notices).

10. Defendant shall not deduct the civil penalty paid under this Section in calculating its federal income tax.

## V. COMPLIANCE REQUIREMENTS

11. It is the express purpose of the Parties in entering into this Consent Decree to further the goals of the CAA. By its signature to this Consent Decree, Defendant certifies that its Facility is now in compliance with the CAA and its implementing regulations, including, without limitation, Section 608 of the CAA, 42 U.S.C.§ 7671g, and its implementing regulations at 40 C.F.R. Part 82, Subpart F.

## VI. SUPPLEMENTAL ENVIRONMENTAL PROJECTS

12. Defendant shall implement the following Supplemental Environmental Projects ("SEPs") as described in the following paragraphs:

     a. Diesel Engine Vehicle Retrofits - $315,000.00

     b. Gas-Powered Lawnmower Buy-Back Program - $90,000.00

     c. GreenGrid Green Roof - $35,000.00

     d. Natural Landscaping/River Restoration - $310,000.00

13. **Diesel Engine Vehicle Retrofits.** By no later than one year after the Effective Date of this Consent Decree, Defendant shall perform a SEP, expending $315,000 in eligible SEP costs

6

for a project retrofitting municipal diesel vehicles within the City of Chicago by installing pollution control devices to reduce the emissions of particulate matter and hydrocarbons. This SEP is described in Appendix A.

14.     **Gas-Powered Lawnmower Buy-Back Program.** Within five years of the Effective Date of the Consent Decree or sooner, Defendant shall perform a SEP which will consist of participating in a series of gas-powered lawnmower buy-back events. This SEP is described in Appendix B.

15.     **Green Roof SEP.** General Iron shall install an extensive Green Roof System ("Green Roof") at a cost of at least $35,000 for its building facility located at 1909 North Clinton, Chicago, Illinois 60614. This SEP is described in Appendix C.

16.     **Natural Landscaping/River Restoration SEP.** General Iron will restore, cleanup, rebuild and re-vegetate the river edge of its property along the North Branch of the Chicago River at a cost of $310,000. This SEP is described in Appendix D.

17.     These SEPs are intended to yield significant environmental or public health benefits and are beyond the requirements of existing law. In implementing the SEPs, Defendant shall spend not less than **$750,000** in eligible SEP costs. Except as provided in paragraph 14 and Appendix B, eligible SEP costs do not include costs associated with developing and implementing the projects under Section VI of this Decree. Nor do they include Defendant's overhead, additional employee time and salary, administrative expenses, legal fees, and contractor oversight. Eligible SEP costs also do not include costs which are inconsistent with the SEP descriptions in the attached appendices.

7

18.    Defendant is responsible for the satisfactory completion of the SEPs in accordance with the requirements of this Decree.  The Defendant may use contractors and/or consultants in planning and implementing the SEPs.

19.    With regard to each SEP, Defendant certifies the truth and accuracy of each of the following:

a.    That all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and represents a fair estimate of the costs necessary to implement the SEP;

b.    That, as of the date of this Decree, Defendant is not required to perform or develop the SEP by any federal, state, or local law or regulation, nor is Defendant required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.    That the SEP is not a project that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

d.    That Defendant has not received, and is not negotiating to receive, credit for the SEP in any other enforcement action; and

e.    That Defendant will not receive any reimbursement for any portion of the SEP from any other person.

20.    Within 30 days after the completion of each SEP, Defendant shall submit a SEP Completion Report to the United States, in accordance with Section XV of this Consent Decree (Notices).  The SEP Completion Reports shall contain the following information:

8

a.     A detailed description of the SEP as implemented;

b.     A description of any problems encountered in completing the SEP and the solutions thereto;

c.     An itemized list of all SEP costs;

d.     Certification that the SEP has been fully implemented pursuant to the provisions of this Decree;

e.     A description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible);

f.     The SEP Completion Report for the Diesel Retrofit SEP shall include:

1) An itemized list containing the following information for each retrofitted vehicle:

a) Vehicle type

b) Vehicle owner with contact name and phone number

c) Model year

d) Engine manufacturer

e) Engine size (Hp)

f) Estimated annual miles or hours of operation

g) Retrofit type per vehicle (e.g., oxidation catalyst, particulate filter)

h) Retrofit cost per vehicle (itemizing all retrofit costs, including installation costs)

i) Estimated fuel usage (gallons per year)

9

j) Estimated emissions reductions for particulate matter, hydrocarbons
and carbon dioxide

k) Copy of invoices for purchase of control technologies

21.     EPA may, in its sole discretion, require information in addition to that described in
the preceding Paragraph, in order to determine the adequacy of SEP completion or eligibility of SEP
costs.

22.     Defendant bears the burden of clearly segregating eligible SEP costs from other costs
not eligible for SEP credit. If EPA requests further information concerning the eligibility of SEP
costs, any non-segregable cost evidence that contains both SEP eligible and non-SEP eligible cost
items shall be disallowed in its entirety.

23.     After receipt of each SEP Completion Report, the United States shall notify
Defendant whether or not Defendant has satisfactorily completed the SEP. If the SEP has not been
satisfactorily completed, or if the amount expended on performance of the SEP is less than the
amount set forth in Paragraph 12, above, Stipulated Penalties shall be paid in accordance with
paragraph 37.

24.     Disputes concerning the satisfactory performance of the SEPs and the amount of
eligible SEP costs may be resolved under Section X of this Decree (Dispute Resolution). No other
disputes arising under this Section shall be subject to Dispute Resolution.

25.     Each submission required under this Section shall be signed by an official with
knowledge of the SEP and shall bear the certification language set forth in Paragraph 30, below.

26.     Any public statement, oral or written, in print, film, or other media, made by
Defendant making reference to any of the SEPs under this Decree shall include the following

10

language, "This project was undertaken in connection with the settlement of an enforcement action, United States v. General Iron Industries, Inc, taken on behalf of the Environmental Protection Agency under the Clean Air Act."

## VII. REPORTING REQUIREMENTS

27.    Defendant shall submit the following reports:

a.    Within 30 days after the end of each semi-annual period *(i.e.*, by January 30 and July 30) until termination of this Decree pursuant to Section XIX, Defendant shall submit in writing a semi-annual report for the preceding six months that shall (1) identify any violation of this Consent Decree and provide an explanation of the violation's likely cause and of the remedial steps taken, and/or to be taken, to prevent or minimize such violation; (2) include a discussion of Defendant's progress in satisfying its obligations in connection with the compliance requirements provided for in this Decree (**Section V**); and (3) include a detailed report on Defendant's progress in completing the required SEPs, specified in Paragraphs 12 through 16, above, including an itemization of the dollar amounts expended.

b.    If Defendant violates any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration in writing within ten working days of the day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, and/or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall include a statement to that effect in the report. Defendant shall investigate to determine the cause of the violation and then shall submit an amendment to

11

the report, including a full explanation of the cause of the violation, within 30 days of the day

Defendant becomes aware of the cause of the violation, or when the next semi-annual report

is due, whichever is earlier.

      c.      Defendant shall submit SEP Completion Reports to the United States, as

specified in paragraph 20, above.

    28.    In the case of any violation or other event that may pose an immediate threat to the

public health, welfare, or the environment, Defendant shall notify EPA orally or by electronic or

facsimile transmission as soon as possible, but not later than 24 hours after Defendant first knew of,

or should have known of, the violation or event. This procedure is in addition to the requirements

set forth in the preceding Paragraph.

    29.    All reports shall be submitted to the persons designated in Section XV of this Consent

Decree (Notices).

    30.    Each report submitted by Defendant under this Section shall be signed by an official

of the submitting party and include the following certification:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather and present the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

31.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

32.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.  STIPULATED PENALTIES

33.     If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) of this Decree when due, Defendant shall pay a stipulated penalty of **$2,000** per day for each day that the payment is late.  Late payment of the civil penalty shall be made in accordance with Section IV, Paragraph 9, above.  Stipulated Penalties shall be paid in accordance with instructions to be obtained from the Financial Litigation Unit of the United States' Attorney's Office.  All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Decree, or for Stipulated Penalties for late payment, as applicable, and shall include the identifying information set forth in Paragraph 9, above.

34.     Defendant shall be liable for Stipulated Penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to complete any activity required by this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

13

35.    Timely Completion of SEPs

      a.    The following Stipulated Penalties shall accrue per violation per day for each violation of the requirements identified in Subparagraph b, below:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| **$500** | 1st through 30th day |
| **$1000** | 31st day and beyond |

      b.    (1) Completion of the installation of the Green Roof within one year of entry of the Consent Decree.

            (2) Completion of the installation of the natural landscaping as described in Appendix D within 790 days of entry of the Consent Decree.

      c.    The penalties for failure to timely complete the SEPs may be waived by written agreement of EPA.

36.    Reporting Requirements  The following Stipulated Penalties shall accrue per violation per day for each violation of the reporting requirements of Section VII of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| **$125** | 1st through 14th day |
| **$250** | 15th through 30th day |
| **$750** | 31 st day and beyond |

If the report is submitted late, then Stipulated Penalties began to accrue immediately. If Defendant in good faith timely submits a report required by Section VII of the Consent Decree and EPA determines that a component of the report is deficient, EPA will provide notice in writing of the deficiency and allow Defendant 14 days to correct the deficiency. In this circumstance, Stipulated Penalties will not begin to accrue until the expiration of this 14-day period.

14

37.    SEP Compliance

a.    If Defendant fails to satisfactorily complete the Diesel Retrofit SEP, Defendant shall pay a stipulated penalty of $345,000 less the amount spent to successfully retrofit vehicles in accordance with Appendix A. If defendant satisfactorily completes the Diesel Retrofit SEP but expends less than $315,000, then Defendant shall pay a stipulated penalty of $315,000 less the amount spent to successfully retrofit vehicles in accordance with Appendix A.

b.    If Defendant fails to satisfactorily complete the Green Roof SEP, Defendant shall pay a stipulated penalty of $35,000. If Defendant satisfactorily completes the Green Roof SEP, but spends less than $35,000, then Defendant shall pay a stipulated penalty equal to the difference between $35,000 and the amount of eligible SEP costs incurred.

c.    If Defendant fails to satisfactorily complete the Natural Landscaping/River Restoration SEP, Defendant shall pay a stipulated penalty of $310,000. If Defendant satisfactorily completes this SEP, but spends less than $310,000, then Defendant shall pay a stipulated penalty equal to the difference between $310,000 and the amount of eligible SEP costs incurred.

d.    If Defendant fails to satisfactorily complete the Gas-Powered Lawnmower Buy-Back SEP, Defendant shall pay a stipulated penalty equal to the difference between $90,000 and the combined amount of eligible cash-worth equivalent SEP credits earned by the Defendant for this SEP and SEP credit for out-of-pocket expenses related to the lawnmower buy-back events.

15

e.     Stipulated penalties under this paragraph are due *without demand* within 30 days after the required completion date for each SEP. If Defendant reasonably believes that it has spent the required amount of money on a SEP, but EPA determines stipulated penalties are due because some of the claimed expenses are not eligible for SEP credit, the Stipulated Penalties are due 30 days after Defendant receives the United States' written demand.

38.     Defendant shall pay any Stipulated Penalty within 30 days of receiving the United States' written demand, except for Stipulated Penalties payable under Paragraph 37, above, which are payable upon accrual.

39.     The United States may, in the unreviewable exercise of its discretion, reduce or waive Stipulated Penalties otherwise due it under this Consent Decree.

40.     Except as provided in Paragraph 37, above, and notwithstanding the date of any demand for such penalties pursuant to Paragraph 38, above, Stipulated Penalties shall begin to accrue on the day after performance is due or on the day a violation occurs (as set forth in paragraphs 33 - 37(d)), whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated Penalties shall simultaneously accrue for separate violations of this Consent Decree.

41.     Stipulated Penalties shall continue to accrue as provided in this Section during any Dispute Resolution, with Interest on accrued penalties payable and calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing,

16

together with Interest, to the United States within 30 days of the effective date of the agreement or the receipt of EPA's decision or order;

      b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph c, below;

      c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with Interest, within 15 days of receiving the final appellate court decision. (This section does not require the Defendant to pay penalties to the extent that it prevails in the dispute.)

42.     Defendant shall pay Stipulated Penalties for violations occurring between the date of lodging and the Effective Date of this Consent Decree within 30 days of the Effective Date of this Decree.

43.     Defendant shall, as directed by the United States, pay Stipulated Penalties owing to the United States in accordance with instructions which Defendant will obtain from the Financial Litigation Unit of the United States Attorney's Office.

44.     Defendant shall not deduct Stipulated Penalties paid under this Section in calculating its federal income tax.

45.     If Defendant fails to pay Stipulated Penalties according to the terms of this Consent Decree, the United States shall be entitled to collect Interest on such penalties, as provided for in 28 U.S.C. § 1961.

17

46.     Failure by the United States to demand stipulated penalties shall have no effect on the accrual of such penalties.

47.     Nothing herein shall preclude the simultaneous accrual of penalties for separate violations of this Consent Decree.

48.     The stipulated penalties herein shall be in addition to, and shall in no way limit, other remedies or sanctions available to the United States by reason of Defendant's failure to comply with the requirements of this Decree and the Clean Air Act.

49.     Subject to the provisions of Section XIII of this Consent Decree (Effect of Settlement/Reservation of Rights), the Stipulated Penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.

### IX.  FORCE MAJEURE

50.     A "force majeure event" is any event beyond the control of Defendant, its contractors, or any entity controlled by Defendant that delays the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

51.     Defendant shall provide notice orally or by electronic or facsimile transmission as soon as possible to EPA at the addresses provided in paragraph 70, but not later than 72 hours after

18

the time Defendant first knew of, or by the exercise of best efforts, should have known of, a claimed force majeure event. Defendant shall also provide written notice, as provided in Section XV of this Consent Decree (Notices), within seven (7) days of the time Defendant first knew of, or by the exercise of best efforts, should have known of, the event. The notice shall state the anticipated duration of any delay; its cause(s); Defendant's past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and Defendant's rationale for attributing any delay to a force majeure event. Failure to give such notice shall preclude Defendant from asserting any claim of force majeure. Defendant shall be deemed to know of any circumstance of which Defendant, its contractors, or any entity controlled by Defendant knew or, through best efforts, should have known.

52.     If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for Defendant to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation.

53.     If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by Defendant, the United States' position shall be binding, unless Defendant invokes Dispute Resolution under Section X of this Consent Decree. In any such dispute, Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event; that Defendant gave the notice required by Paragraph 51; that the force majeure event caused any delay Defendant claims was attributable to that event; and that Defendant exercised best efforts to prevent or minimize any delay caused by the event.

19

## X. DISPUTE RESOLUTION

54.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, such procedures shall not apply to actions by the United States to enforce obligations of the Defendant that have not been disputed in accordance with this Section.

55.     Informal Dispute Resolution. Any dispute reviewable under this Consent Decree shall first be the subject of informal negotiations. The period of informal negotiations shall not exceed 30 days from the time Defendant sends the United States a written Notice of Dispute in accordance with Section XV of this Consent Decree (Notices), unless that period is modified by written agreement. Such Notice of Dispute shall state clearly the matter in dispute. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

56.     Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by filing with the Court and serving on the United States, in accordance with Section XV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

20

a.     The United States shall respond to Defendant's motion within the time period provided in the Local Rules of this Court, unless the parties stipulate otherwise. Defendant may file a reply memorandum, to the extent permitted by the Local Rules or the Parties' stipulation; as applicable.

b.     In any dispute under this Paragraph, Defendant shall bear the burden of demonstrating that its position clearly complies with and furthers the objectives of this Consent Decree and the Clean Air Act. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

57.     Invoking dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, not directly in dispute, unless the United States agrees, or the Court (upon timely application pursuant to this Section) determines otherwise. Stipulated Penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in this Section, above. If Defendant does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties). To the extent that Defendant prevails on the disputed issue, it does not have to pay costs, penalties or the interest that accrued during the dispute.

21

## XI. INFORMATION COLLECTION AND RETENTION

58. The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry to any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials to:

        a.     monitor the progress of activities required under this Consent Decree;

        b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree; obtain samples and, upon request, splits of any samples taken by Defendant or its representative, contractors, or consultants;

        c.     obtain documentary evidence, including photographs and similar data; and

        d.     assess Defendant's compliance with this Consent Decree.

59. Until three (3) years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all records and documents (including records or documents in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This record retention requirement shall apply regardless of any corporate or institutional document-retention policy to the contrary. At any time during this record-retention period, the United States may request copies of any documents or records required to be maintained under this Paragraph.

60. At the conclusion of the document-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 days prior to the destruction of any records or documents subject to the requirements of the preceding Paragraph, and, upon request by

22

the United States, Defendant shall deliver any such records or documents to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no documents, reports, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged.

61. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits.

## XII. FAILURE OF COMPLIANCE

62. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of Section 608 of the Act, 42 U.S.C. § 7671g, or implementing regulations at 40 C.F.R. Part 82, Subpart F. Notwithstanding the United States' review and approval of any documents submitted to it by Defendant pursuant to this Consent Decree, Defendant shall remain solely responsible for compliance with the terms of the Act and this Consent Decree.

23

## XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

63.     This Consent Decree resolves the civil claims of the United States that General Iron disposed of refrigerant-containing appliances at the Facility in a manner which violated 40 C.F.R. §§ 82.154 (a) and 82.156 (f), through the date of lodging of the Consent Decree.

64.     This Consent Decree shall not be construed to prevent or limit the rights of the United States to obtain penalties or injunctive relief under the Act, or under other federal or state laws, regulations, or permit conditions, except as expressly specified herein.

65.     Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, or permits. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.

66.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

67.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

68.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated herein. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health, welfare, or the environment arising at, or posed by, Defendant's Facility and whether related to the violations addressed in this Consent Decree or otherwise.

24

## XIV. COSTS

69.     The Parties shall bear their own costs of this action, including attorneys fees, except that the United States shall be entitled to collect the costs (including attorneys fees) incurred in any action necessary to collect any portion of the civil penalty or any Stipulated Penalties due but not paid by Defendant.

## XV. NOTICES

70.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

**To the United States:**

**Chief, Environmental Enforcement Section**
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-2-1-07322

and

**Jonathan C. Haile**
Assistant United States Attorney
United States Attorney
Northern District of Illinois
Dirksen Federal Building
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604

25

**To EPA:**

**Air Enforcement and Compliance Assurance Branch**
**ATTN: Compliance Tracker**
Air Enforcement Branch, AE-17J
U.S. EPA, Region V
77 West Jackson Boulevard
Chicago, Illinois 60604-3590

and

**Thomas J. Kenney**
Senior Attorney
Office of Regional Counsel (C-14J)
U.S. EPA, Region V
77 West Jackson Boulevard
Chicago, Illinois 60604-3590

**To Defendant:**

**Adam Labkon**
General Iron Industries, Inc.
1909 North Clifton Avenue
Chicago, Illinois 60614

and

**Stephen A. Swedlow**
Swedlow & Associates
205 N. Michigan Ave.
Suite 1940
Chicago, Illinois 60601

71.    Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

72.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing,

unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

26

## XVI. EFFECTIVE DATE

73.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XVII. RETENTION OF JURISDICTION

74.     The Court shall retain jurisdiction of this case until termination of this Consent Decree, for the purpose of enabling any of the Parties to apply to the Court for such further order, direction, or relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section X of this Decree (Dispute Resolution).

## XVIII. MODIFICATION

75.     Subject to the Court's inherent power under the Federal Rules to alter or amend judgments, the terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to any term of this Decree, it shall be effective only upon approval by the Court.

## XIX. TERMINATION

76.     After Defendant has satisfactorily complied with all requirements of this Consent Decree, including those relating to the SEPs required by Section VI, and has paid the civil penalty and any accrued Stipulated Penalties as required by this Consent Decree, Defendant may serve upon

27

the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

77.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

78.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section X of this Decree. However, Defendant shall not seek judicial resolution of any dispute, under Section X, until sixty days after service of its Request for Termination.

## XX. SIGNATORIES/SERVICE

79.     Each undersigned representative of Defendant, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice (or her delegate) certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

80.     This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

81.     Defendant agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

82.     Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set

28

forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. INTEGRATION/APPENDICES

83.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII. FINAL JUDGMENT

84.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the United States and Defendant.

29

Dated and entered this _____ day of _____ **AUG 2 2 2006** _____, _____.

Judge Joan Lefkow
UNITED STATES DISTRICT JUDGE
Northern District of Illinois

**AUG 2 2 2006**

30

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. General Iron Industries, Inc.</u>:

FOR PLAINTIFF UNITED STATES OF AMERICA:

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources
  Division
United States Department of Justice

Date: ___8/11/06___

W. BENJAMIN FISHEROW
Deputy Section Chief
Environment and Natural Resources
  Division
United States Department of Justice

PATRICK J. FITZGERALD
United States Attorney

By: _____   Date: ___8/14/06___

JONATHAN C. HAILE
Assistant United States Attorney
Northern District of Illinois
Dirksen Federal Building
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604

31

# RESERVED PAGE

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. General Iron Industries, Inc.</u>:


Date: _8/4/06_

BHARAT MATHUR
Acting Regional Administrator
Region V
U.S. Environmental Protection Agency


Date: _7/28/06_

THOMAS J. KENNEY
Associate Regional Counsel
U.S. Environmental Protection Agency
Region V
77 West Jackson Boulevard (C-14J)
Chicago, Illinois 60604

33

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. General Iron Industries, Inc.</u>:

FOR DEFENDANT, General Iron Industries, Inc.:

Adam Labkon, Vice president
[NAME, TITLE]

Date: 7/24/2006

34

**APPENDICES**

## CONSENT AGREEMENT APPENDIX A
## DIESEL RETROFIT SUPPLEMENTAL ENVIRONMENTAL PROJECT

1.     The General Iron Retrofit SEP ("Retrofit SEP") involves reducing particulate matter and other harmful air pollutants from diesel engine exhaust by retrofitting diesel oxidation catalyst devices onto City of Chicago diesel vehicles to minimize the emissions from these vehicles. These emissions contribute to acid rain, ground-level ozone and reduced visibility. The vehicles and equipment covered by the Retrofit SEP are currently operated and maintained by the City of Chicago Department of Fleet Management. The Retrofit SEP is designed to benefit the populations within the general geographic area in which the General Iron facility is located.

2.     General Iron will retrofit approximately 250 City of Chicago diesel vehicles with diesel oxidation catalysts manufactured by the International Truck and Engine Corporation as described in the attached brochure. The effectiveness of these catalysts has been verified by EPA. The vehicles to be retrofitted will be chosen from among the vehicles listed in Table 1 attached hereto. Table II provides information about the vehicle types and estimated emission reductions. Each of these retrofits is estimated to cost approximately $1,260.

3.     General Iron shall spend a total of $315,000 to implement the Retrofit SEP. Costs incurred for internal General Iron personnel (or entities in which General Iron has a financial interest) in the development and oversight of the SEP may not be credited against the $315,000 spending requirement.

4.     For purposes of this SEP, "satisfactory completion" shall mean that General Iron demonstrates full involvement in the SEP and retrofits at least 200 vehicles with International diesel oxidation catalysts, or substitute device approved in writing by EPA. The retrofit SEP must be

36

completed within one year from the Effective Date of the Consent Decree, unless the time is
extended by EPA's written agreement.



# International Truck & Engine Corporation
### Green Diesel Technology ™ by International ®

## Diesel Particulate Filter (DPF)



International® diesel particulate filters utilize the latest advancements in emission control technology from Engelhard, a world leader in emission technology.

*Retrofit filters provide:*
- *70-98% reduction in particulate matter (PM) and visible smoke; depending on fuel quality*
- *70-98% reduction in CO and HC*
- *Reduced odor*
- *Reduced noise*

*Diesel particulate filters from International are passive systems and allow oxidation of PM at normal operating temperatures.*

*Benefits include:*
- *Fuel sulfur tolerance. Although we require the use of ultra low sulfur fuel (15ppm), occasional use of higher sulfur fuel in emergency situations will not damage the system or stop the vehicle.*

- *Easy cleaning and maintenance. We recommend cleaning and visual inspection once every (12) twelve months or every 60,000 miles/100,000 kilometers. Certain applications may require more frequent service. International systems include a pressure monitor sensor, which will indicate the need for cleaning. Only removal of the non-toxic ash is required to clean the filter.*

- *No additional energy devices. DPF systems are designed to be passive systems and regenerate under normal vehicle operating conditions.*

- *Effective under most driving conditions. Idling does not substantially affect the performance of the DPF. During idling, very little PM is produced, and the PM that is produced is primarily oil and fuel that the DPF easily eliminates.*

- *Adaptability. The DPF is available for use on most diesel buses and medium trucks with electronic ....*

## Diesel Oxidation Catalyst (DOC)



International® diesel oxidation catalyst is OEM engineered and built.

*Retrofit catalyst provide:*
- *20-30% reduction in particulate matter (PM)*
- *up to 50% reduction in carbon monoxide (CO) and hydrocarbons (HC)*
- *Harmful hydrocarbons (HC) are also reduced up to 50%*

*Recommended for mechanical engine vehicles that do not qualify for the DPF.*

*Benefits include:*
- *Proven low cost emissions reduction technology*
- *Easy to install and requires no maintenance after installation.*
- *The muffler and catalyst are combined to provide sound attenuation and emission reduction capabilities.*

Green Diesel Technology ™ by International ® retrofit products have been Verified by The Federal EPA and eligible for Federal and most state and local grant funding. Manufactured with Stainless Steel materials for durability and corrosion resistance. Meets U.S. Federal on-highway vehicle noise regulations.
*Additional information can be found on the EPA website at www.epa.gov .*

*FOR BUSINESS AND THE ENVIRONMENT*
Today in the U.S., almost all heavy trucks, medium trucks and buses are powered by diesel. And it's not just because of diesel's unsurpassed power and performance. Here are a few more reasons: Green Diesel Technology® vehicles developed by International and IC Corporation, International's wholly-owned affiliate, are the wave of the future. Using the breakthrough advantages of advanced diesel engine technology, particulate filters and ultra-low-sulfur diesel fuel, some engines developed by International have already been certified as meeting the U.S. Environmental Protection Agency's 2007 standards for particulate matter (PM) and hydrocarbons (HC). And there's even more improvement on the way. International's retrofit kits are another part of the emission improvement line of products offered through all authorized International and IC bus dealer locations. You can rest assured all federal guidelines will be met -- and that we'll continue to provide you with clean trucks and buses that move you ahead, on the road and in your business.

TABLE 1

4/26/2006

| GENERAL IRON | | CHICAGO INTERNATIONAL |
|---|---|---|
| | 60 | 2006 AUTOCAR XPEDITOR |
| | 2 | 2006 AUTOCAR XPEDITOR |
| | 62 | |

| | GENERAL IRON | CHICAGO INTERNATIONAL |
|---|---|---|
| 1 | S10149 | 2005 AUTOCAR EXPEDITOR |
| 2 | S10148 | 2005 AUTOCAR EXPEDITOR |
| 3 | S10147 | 2005 AUTOCAR EXPEDITOR |
| 4 | S10146 | 2005 AUTOCAR EXPEDITOR |
| 5 | S10145 | 2005 AUTOCAR EXPEDITOR |
| 6 | S10144 | 2005 AUTOCAR EXPEDITOR |
| 7 | S10143 | 2005 AUTOCAR EXPEDITOR |
| 8 | S10142 | 2005 AUTOCAR EXPEDITOR |
| 9 | S10141 | 2005 AUTOCAR EXPEDITOR |
| 10 | S10140 | 2005 AUTOCAR EXPEDITOR |
| 11 | S10139 | 2005 AUTOCAR EXPEDITOR |
| 12 | S10138 | 2005 AUTOCAR EXPEDITOR |
| 13 | S10137 | 2005 AUTOCAR EXPEDITOR |
| 14 | S10136 | 2005 AUTOCAR EXPEDITOR |
| 15 | S10135 | 2005 AUTOCAR EXPEDITOR |
| 16 | S10134 | 2005 AUTOCAR EXPEDITOR |
| 17 | S10133 | 2005 AUTOCAR EXPEDITOR |
| 18 | S10132 | 2005 AUTOCAR EXPEDITOR |
| 19 | S10131 | 2005 AUTOCAR EXPEDITOR |
| 20 | S10130 | 2005 AUTOCAR EXPEDITOR |
| 21 | S10129 | 2005 AUTOCAR EXPEDITOR |
| 22 | S10128 | 2005 AUTOCAR EXPEDITOR |
| 23 | S10127 | 2005 AUTOCAR EXPEDITOR |
| 24 | S10126 | 2005 AUTOCAR EXPEDITOR |
| 25 | S10125 | 2005 AUTOCAR EXPEDITOR |
| 26 | S10124 | 2005 AUTOCAR EXPEDITOR |
| 27 | S10123 | 2005 AUTOCAR EXPEDITOR |
| 28 | S10122 | 2005 AUTOCAR EXPEDITOR |
| 29 | S10121 | 2005 AUTOCAR EXPEDITOR |
| 30 | S10818 | 2001 VOLVO XPEDITOR |
| 31 | S10817 | 2001 VOLVO XPEDITOR |
| 32 | S10816 | 2001 VOLVO XPEDITOR |
| 33 | S10815 | 2001 VOLVO XPEDITOR |
| 34 | S10814 | 2001 VOLVO XPEDITOR |
| 35 | S10813 | 2001 VOLVO XPEDITOR |
| 36 | S10812 | 2001 VOLVO XPEDITOR |
| 37 | S10811 | 2001 VOLVO XPEDITOR |
| 38 | S10810 | 2001 VOLVO XPEDITOR |

39

TABLE 1

| | | |
|---|---|---|
| 39 | S10809 | 2001 VOLVO XPEDITOR |
| 40 | S10808 | 2001 VOLVO XPEDITOR |
| 41 | S10807 | 2001 VOLVO XPEDITOR |
| 42 | S10806 | 2001 VOLVO XPEDITOR |
| 43 | S10805 | 2001 VOLVO XPEDITOR |
| 44 | S10804 | 2001 VOLVO XPEDITOR |
| 45 | S10803 | 2001 VOLVO XPEDITOR |
| 46 | S10802 | 2001 VOLVO XPEDITOR |
| 47 | S10801 | 2001 VOLVO XPEDITOR |
| 48 | S10800 | 2001 VOLVO XPEDITOR |
| 49 | S10789 | 1999 VOLVO XPEDITOR |
| 50 | S10788 | 1999 VOLVO XPEDITOR |
| 51 | S10787 | 1999 VOLVO XPEDITOR |
| 52 | S10786 | 1999 VOLVO XPEDITOR |
| 53 | S10785 | 1999 VOLVO XPEDITOR |
| 54 | S10784 | 1999 VOLVO XPEDITOR |
| 55 | S10783 | 1999 VOLVO XPEDITOR |
| 56 | S10782 | 1999 VOLVO XPEDITOR |
| 57 | S10781 | 1999 VOLVO XPEDITOR |
| 58 | S10780 | 1999 VOLVO XPEDITOR |
| 59 | S10779 | 1999 VOLVO XPEDITOR |
| 60 | S10778 | 1999 VOLVO XPEDITOR |
| 61 | S10777 | 1999 VOLVO XPEDITOR |
| 62 | S10776 | 1999 VOLVO XPEDITOR |
| 63 | S10775 | 1999 VOLVO XPEDITOR |
| 64 | S10774 | 1999 VOLVO XPEDITOR |
| 65 | S10773 | 1999 VOLVO XPEDITOR |
| 66 | S10772 | 1999 VOLVO XPEDITOR |
| 67 | S10771 | 1999 VOLVO XPEDITOR |
| 68 | S10770 | 1999 VOLVO XPEDITOR |
| 69 | S10769 | 1999 VOLVO XPEDITOR |
| 70 | S10768 | 1999 VOLVO XPEDITOR |
| 71 | S10767 | 1999 VOLVO XPEDITOR |
| 72 | S10766 | 1999 VOLVO XPEDITOR |
| 73 | S10765 | 1999 VOLVO XPEDITOR |
| 74 | S10764 | 1999 VOLVO XPEDITOR |
| 75 | S10763 | 1999 VOLVO XPEDITOR |
| 76 | S10762 | 1999 VOLVO XPEDITOR |
| 77 | S10761 | 1999 VOLVO XPEDITOR |
| 78 | S10760 | 1999 VOLVO XPEDITOR |
| 79 | S10759 | 1999 VOLVO XPEDITOR |
| 80 | S10758 | 1999 VOLVO XPEDITOR |
| 81 | S10757 | 1999 VOLVO XPEDITOR |
| 82 | S10756 | 1999 VOLVO XPEDITOR |
| 83 | S10755 | 1999 VOLVO XPEDITOR |
| 84 | S10754 | 1999 VOLVO XPEDITOR |
| 85 | S10753 | 1999 VOLVO XPEDITOR |
| 86 | S10752 | 1999 VOLVO XPEDITOR |
| 87 | S10751 | 1999 VOLVO XPEDITOR |
| 88 | S10750 | 1999 VOLVO XPEDITOR |
| 89 | S10749 | 1999 VOLVO XPEDITOR |
| 90 | S10748 | 1999 VOLVO XPEDITOR |

40

TABLE 1

| 91 | S10747 | 1999 VOLVO XPEDITOR |
| 92 | S10746 | 1999 VOLVO XPEDITOR |
| 93 | S10745 | 1999 VOLVO XPEDITOR |
| 94 | S10744 | 1999 VOLVO XPEDITOR |
| 95 | S10743 | 1999 VOLVO XPEDITOR |
| 96 | S10742 | 1999 VOLVO XPEDITOR |
| 97 | S10741 | 1999 VOLVO XPEDITOR |
| 98 | S10740 | 1999 VOLVO XPEDITOR |
| 99 | S10739 | 1999 VOLVO XPEDITOR |
| 100 | S10738 | 1999 VOLVO XPEDITOR |
| 101 | S10737 | 1999 VOLVO XPEDITOR |
| 102 | S10736 | 1999 VOLVO XPEDITOR |
| 103 | S10735 | 1999 VOLVO XPEDITOR |
| 104 | S10734 | 1999 VOLVO XPEDITOR |
| 105 | S10733 | 1999 VOLVO XPEDITOR |
| 106 | S10732 | 1999 VOLVO XPEDITOR |
| 107 | S10731 | 1999 VOLVO XPEDITOR |
| 108 | S10730 | 1999 VOLVO XPEDITOR |
| 109 | S10729 | 1999 VOLVO XPEDITOR |
| 110 | S10728 | 1999 VOLVO XPEDITOR |
| 111 | S10727 | 1999 VOLVO XPEDITOR |
| 112 | S10726 | 1999 VOLVO XPEDITOR |
| 113 | S10725 | 1999 VOLVO XPEDITOR |
| 114 | S10654 | 1997 VOLVO XPEDITOR |
| 115 | S10653 | 1997 VOLVO XPEDITOR |
| 116 | S10652 | 1997 VOLVO XPEDITOR |
| 117 | S10651 | 1997 VOLVO XPEDITOR |
| 118 | S10650 | 1997 VOLVO XPEDITOR |
| 119 | S10649 | 1997 VOLVO XPEDITOR |
| 120 | S10648 | 1997 VOLVO XPEDITOR |
| 121 | S10647 | 1997 VOLVO XPEDITOR |
| 122 | S10646 | 1997 VOLVO XPEDITOR |
| 123 | S10645 | 1997 VOLVO XPEDITOR |
| 124 | S10644 | 1997 VOLVO XPEDITOR |
| 125 | S10643 | 1997 VOLVO XPEDITOR |
| 126 | S10642 | 1997 VOLVO XPEDITOR |
| 127 | S10641 | 1997 VOLVO XPEDITOR |
| 128 | S10640 | 1997 VOLVO XPEDITOR |
| 129 | S10639 | 1997 VOLVO XPEDITOR |
| 130 | S10638 | 1997 VOLVO XPEDITOR |
| 131 | S10637 | 1997 VOLVO XPEDITOR |
| 132 | S10636 | 1997 VOLVO XPEDITOR |
| 133 | S10635 | 1997 VOLVO XPEDITOR |
| 134 | S10634 | 1997 VOLVO XPEDITOR |
| 135 | S10633 | 1997 VOLVO XPEDITOR |
| 136 | S10632 | 1997 VOLVO XPEDITOR |
| 137 | S10631 | 1997 VOLVO XPEDITOR |
| 138 | S10630 | 1997 VOLVO XPEDITOR |
| 139 | S10629 | 1997 VOLVO XPEDITOR |
| 140 | S10628 | 1997 VOLVO XPEDITOR |
| 141 | S10627 | 1997 VOLVO XPEDITOR |
| 142 | S10626 | 1997 VOLVO XPEDITOR |

41

TABLE 1

| | | |
|---|---|---|
| 143 | S10625 | 1997 VOLVO XPEDITOR |
| 144 | S10622 | 1996 VOLVO XPEDITOR |
| 145 | S10621 | 1996 VOLVO XPEDITOR |
| 146 | S10620 | 1996 VOLVO XPEDITOR |
| 147 | S10619 | 1996 VOLVO XPEDITOR |
| 148 | S10618 | 1996 VOLVO XPEDITOR |
| 149 | S10617 | 1996 VOLVO XPEDITOR |
| 150 | S10616 | 1996 VOLVO XPEDITOR |
| 151 | S10615 | 1996 VOLVO XPEDITOR |
| 152 | S10614 | 1996 VOLVO XPEDITOR |
| 153 | S10613 | 1996 VOLVO XPEDITOR |
| 154 | S10612 | 1996 VOLVO XPEDITOR |
| 155 | S10611 | 1996 VOLVO XPEDITOR |
| 156 | S10610 | 1996 VOLVO XPEDITOR |
| 157 | S10609 | 1996 VOLVO XPEDITOR |
| 158 | S10608 | 1996 VOLVO XPEDITOR |
| 159 | S10607 | 1996 VOLVO XPEDITOR |
| 160 | S10606 | 1996 VOLVO XPEDITOR |
| 161 | S10605 | 1996 VOLVO XPEDITOR |
| 162 | S10604 | 1996 VOLVO XPEDITOR |
| 163 | S10603 | 1996 VOLVO XPEDITOR |
| 164 | S10602 | 1996 VOLVO XPEDITOR |
| 165 | S10601 | 1996 VOLVO XPEDITOR |
| 166 | S10600 | 1996 VOLVO XPEDITOR |
| 167 | S10579 | 1996 VOLVO XPEDITOR |
| 168 | S10578 | 1996 VOLVO XPEDITOR |
| 169 | S10577 | 1996 VOLVO XPEDITOR |
| 170 | S10576 | 1996 VOLVO XPEDITOR |
| 171 | S10575 | 1996 VOLVO XPEDITOR |
| 172 | S10574 | 1996 VOLVO XPEDITOR |
| 173 | S10573 | 1996 VOLVO XPEDITOR |
| 174 | S10572 | 1996 VOLVO XPEDITOR |
| 175 | S10571 | 1996 VOLVO XPEDITOR |
| 176 | S10560 | 1996 VOLVO XPEDITOR |
| 177 | S10558 | 1996 VOLVO XPEDITOR |
| 178 | S10557 | 1996 VOLVO XPEDITOR |
| 179 | S10559 | 1995 VOLVO XPEDITOR |
| 180 | S10556 | 1995 VOLVO XPEDITOR |
| 181 | S10555 | 1995 VOLVO XPEDITOR |
| 182 | S10554 | 1995 VOLVO XPEDITOR |
| 183 | S10553 | 1995 VOLVO XPEDITOR |
| 184 | S10552 | 1995 VOLVO XPEDITOR |
| 185 | S10551 | 1995 VOLVO XPEDITOR |
| 186 | S10550 | 1995 VOLVO XPEDITOR |
| 187 | S10549 | 1995 VOLVO XPEDITOR |
| 188 | S10548 | 1995 VOLVO XPEDITOR |

42

TABLE 1

**REFUSE TRUCK RETROFITS - GENERAL IRON**

| | | |
|---|---|---|
| 20 CUBIC YARD REFUSE TRUCKS | 3RB | S&S BUR OF SANITATION |
| 16 CUBIC YARD REFUSE TRUCKS | 3RB | S&S BUR OF SANITATION |

| | | |
|---|---|---|
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |

43

TABLE I

| | | |
|---|---|---|
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |

44

TABLE 1

| | | |
|---|---|---|
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |

TABLE 1

| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
|---|---|---|
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |
| REFUSE COMPACTOR TRUCK, REAR LOAD | 3RB | S&S BUR OF SANITATION |

TABLE 2

| QUANTITY | VEHICLE TYPE | OWNER | MODEL YEAR | ENGINE MANUFACTURER | ENGINE HP | AVERAGE ANNUAL MILES | RETROFIT TYPE | RETROFIT COST (INCL. INSTALLATION) | ESTIMATED EMISSIONS REDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | PM | HC | CO |
| 2 | VOLVO XPEDITOR CAB OVER ENGINE DIESEL TRUCK CHASSIS WITH REFUSE BODY | CITY OF CHICAGO | 2004 | CUMMINS | 285 | 7610 | INTERNATIONAL "GREEN DIESEL" OXIDATION CATALYST | $1,258.75 | 20% TO 30% | UP TO 50% | UP TO 50% |
| 3 | | | 2008 | CUMMINS | 350 | 6192 | | | | | |
| 105 | | | 2003 | CUMMINS | 320 | 5904 | | | | | |
| 28 | | | 2001 | CUMMINS | 305 | 6140 | | | | | |
| 19 | | | 1999 | CUMMINS | 305 | 7317 | | | | | |
| 30 | | | 1998 | CATERPILLAR | 305 | 7317 | | | | | |
| 30 | | | 1997 | CATERPILLAR | 305 | 7403 | | | | | |
| 50 | | | 1996 | CATERPILLAR | 305 | 7415 | | | | | |
| 35 | | | 1995 | CATERPILLAR | 305 | 7638 | | | | | |
| 10 | | | | | | | | $314,937.50 | | | |
| 354 | | | | | | | | | | | |

47

## CONSENT AGREEMENT APPENDIX B
## GAS-POWERED LAWNMOWER BUY-BACK PROGRAM

1.      Within five years of the Effective Date of the Consent Decree, Defendant shall perform a SEP which will consist of participating in a series of gas-powered lawnmower buy-back events. General Iron shall achieve a total combined cash-worth equivalency credit and SEP credit of $90,000 for its participation in these events. Gas-powered lawnmowers contribute to regional ozone problems (smog) by emitting pollutants including Volatile Organic Compounds (VOCs) and nitrogen oxides. The gas powered lawn-mowers will be surrendered and destroyed in exchange for discounts on the purchase of electric, battery or non-motorized lawnmowers, thereby improving air quality.

2.      General Iron will coordinate and assist the Metropolitan Mayor's Caucus and Clean Air Counts in planning and conducting lawnmower buy-back events in Cook County. These events will take place at times to be determined by the Metropolitan Mayor's Caucus based on anticipated response. The lawnmower buy-back events will encourage households to trade-in their gas-powered lawnmower and receive a rebate certificate (to be provided through funding available to the Metropolitan Mayors' Caucus) on the purchase of an electric, battery or non-motorized lawnmower. The amount of the rebate certificate to be offered at each buy-back event shall be determined by the Metropolitan Mayors' Caucus.

3.      General Iron shall receive a $3,000 cash-worth equivalent SEP credit for each lawnmower buy-back event in which it participates for providing the services enumerated in this paragraph. General Iron's obligation for its cash worth equivalent SEP credit are the following: provision for use and operation of a skid steer that will be equipped with a grapple or bucket to load

the lawn care products into the roll off boxes, mobilization of the equipment to and from the lawnmower buyback event, provision for roll-off boxes sufficient for the volume of lawnmowers collected at the event, trucking services for delivery, spotting and removal of the roll-off boxes and disposal of the recycled gas-powered lawnmowers, and full inspection and any required maintenance of all equipment to be used at the event. In addition to this $3,000 cash worth equivalent credit, General Iron will receive SEP credit for the following out-of-pocket expenditures related to the lawnmower buy-back events: cost of redeemed rebate certificates, advertising and promotional costs, all reimbursable municipal costs and hazardous waste disposal costs.

4.     For purposes of this SEP, "satisfactory completion" shall mean that General Iron demonstrates full involvement in the SEP as described in this appendix and as documented in the SEP Completion Report and coordinates and assists the Metropolitan Mayor's Caucus and Clean Air Counts in conducting lawnmower buy-back event planning and execution at the times directed by the Metropolitan Mayor's Caucus.

5.     If for any reason, Defendant has achieved less than $90,000 in combined cash-worth equivalent SEP credit and SEP credit for event-related expenses within five years of the Effective Date of this Consent Decree, General Iron shall pay the balance of the uncredited amount in cash in accordance with the payment requirements set forth in paragraph 37d of the Consent Decree. This payment shall be made within thirty days of the completion deadline.

49

## CONSENT AGREEMENT APPENDIX C
## GREEN ROOF SUPPLEMENTAL ENVIRONMENTAL PROJECT

1.      The General Iron Green Roof Supplemental Environmental Project ("Green Roof SEP") involves installing and assembling an extensive Green Roof system on top of the conventional roof for the General Iron facility located at 1909 North Clifton Avenue, Chicago, Illinois 60614. The Green Roof SEP is designed to: improve water quality by managing storm water discharge from the roof, mitigate the urban heat island effect, and improve air quality through the reduction of smog-forming chemicals such as ground level ozone, particulates, and nitrous oxides (as well as carbon dioxide).

2.      The Green Roof SEP will involve the assembly and installation of an extensive Green Roof system over at least 1,750 square feet of the existing conventional roof on the facility located at 1909 North Clifton Avenue, Chicago, Illinois 60614. "Extensive" means that the Green Roof system requires minimal maintenance and periodic fertilization. The components of this extensive Green Roof assembly include: edge restraints, a root barrier, a drainage core/moisture retention system, separation fabric and growing media at a two inch depth. Into this assembly will be placed 3,000 plugs of various root plants.

3.      General Iron or its contractor shall, no later than sixty days from the Effective Date of this Consent Decree, apply for all permits required to construct the extensive Green Roof assembly described herein. The permit application will include, as necessary, structural engineering calculations sufficient to demonstrate that the subject facility can support the Green Roof assembly.

4.      General Iron shall ensure that all contractor costs related to the SEP are reasonable and necessary for the satisfactory completion of the SEP. Costs incurred for internal General Iron

50

personnel (or entities in which General Iron has a financial interest) in the development and oversight of the SEP may not be credited against the $35,000 spending requirement.

5.    General Iron or its contractor shall complete the assembly and installation of the extensive Green Roof system no later than one year from the Effective Date of the Consent Decree.

6.    For purposes of this SEP, "satisfactory completion" shall mean that General Iron has successfully installed an extensive Green Roof assembly covering at least 1,750 square feet of the conventional roof on the facility located at 1909 North Clifton Avenue, Chicago, Illinois 60614, and maintained it for a period of five years.

7.    If for any reason General Iron spends less than the full $35,000, General Iron shall pay the balance in accordance with the payment requirements set forth in paragraph 37.    This payment shall be made within 30 days of the completion deadline in paragraph 5, above.

## CONSENT AGREEMENT APPENDIX D
## NATURAL LANDSCAPING SUPPLEMENTAL ENVIRONMENTAL PROJECT

1. The General Iron Natural Landscaping and River Restoration Supplemental Environmental Project ("Natural Landscaping SEP") involves the restoration, cleanup and re-vegetation of the river edge property along the North Branch of the Chicago River at the following locations: (1) 1441 North Magnolia, Chicago, Illinois 60602 ("Magnolia") and/or (2) 1066 West North Avenue, Chicago, Illinois 60622 ("North Avenue"). The Natural Landscaping SEP is designed to benefit the populations within the general geographic area in which the General Iron facility is located by reducing emissions of smog, hydrocarbons and carbon monoxide created by the landscaping maintenance equipment required for traditional turf grass. This Natural Landscaping SEP will also contribute to the reduction of the number of Ozone Alert days in Chicago, improve regional air quality, prevent land erosion, reduce the Greenhouse Effect and help combat global climate change by removing carbon dioxide from the atmosphere.

2. The Natural Landscaping SEP will involve the landscaping (as described herein) of at least a combined 450 linear feet measured along the edge of the Chicago River at Magnolia and/or North Avenue and a total landscaped area of at least 10,000 square feet along the river edge. General Iron shall spend at least $310,000 on the Natural Landscaping SEP.

3. The Natural Landscaping SEP will include the cleaning of debris and garbage from along the edge of the Chicago River at Magnolia and/or North Avenue. Dead trees and branches will be removed and trees pruned (or removed) as necessary. The River's edge will be prepared to the extent required to allow for the installation of a new retention wall (as limited herein) for the

52

purpose of changing the grade through addition of topsoil to enable the river edge property to sustain the contemplated landscaping described herein.

    4.    For the Natural Landscaping SEP, no more than $100,000 may be credited as eligible SEP costs for the installation of retention wall at the river edge at Magnolia and only for areas in which natural landscaping is installed at the river edge. However, General Iron is not required to install a retention wall for purposes of this SEP.

    5.    New trees and saplings will be planted to re-vegetate the area along the Chicago River at Magnolia and/or North Avenue. Species such as Marmo Maple, Bald Cypress, Accolade Elm will be underplanted with Thornless Cockspur Hawthorn, Iroquois Beauty Chokeberry, Nearly Wild Rose, Miss Kim Lilac, Ralph Senior Viburnum, Golden Glory Dogwood, Chinese Lilac and Double Knockout Rose.

    6.    Perennials, grasses and seeding will include Little Spire Russian Sage, Black-Eyed Susan, Prairie Drop Seed with Alium and Liatris, and Short Grass Prairie Seed.

    7.    An irrigation system, including but not limited to supplemental waterline(s) to the planted and landscaped areas, will be installed to assist in the establishment of the landscaped areas. The waterlines will also be capable of providing supplemental water during periods of prolonged drought.

    8.    On or before 790 days after the entry of the Consent Decree, General Iron shall complete the installation of the natural landscaping at Magnolia and/or North Avenue.

    9.    For purposes of this Natural Landscaping SEP, "satisfactory completion" shall mean that General Iron has (1) restored and re-vegetated at least 450 linear feet of river edge property as described herein and at least 10,000 square feet of landscaping along the North Branch of the

Chicago River at North Avenue and Magnolia combined; (2) if necessary, rebuilt the river edge property; and (3) maintained the natural landscaping and its irrigation system for a period of five years after the Effective Date of this Consent Decree by the Court.

10.     General Iron shall ensure that all contractor costs related to the SEP are reasonable and necessary for the satisfactory completion of the SEP. Costs incurred for internal General Iron personnel (or by entities in which General Iron has a financial interest) in the development and oversight of the SEP may not be credited against the $310,000 spending requirement.

11.     If for any reason General Iron spends less than the full $310,000, General Iron shall pay the balance in accordance with the payment requirements set forth in paragraph 37. This payment shall be made within 30 days of the completion deadline in paragraph 8, above.

54